[No. B015640. Second Dist., Div. Five. Jan. 8, 1987.]

CHUBB/PACIFIC INDEMNITY GROUP, Plaintiff, Cross-defendant and Appellant, v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant, Cross-complainant and Respondent.

COUNSEL

Fidler & Bell and Michael A. Bell for Plaintiff, Cross-defendant and Appellant.

Wise, Wiezorek, Timmons & Wise, Michael J. Pearce and Anthony F. Wiezorek for Defendant, Cross-complainant and Respondent.

## OPINION

**FEINERMAN, P. J.**—This appeal involves four cases which were consolidated for trial. Each of these four consolidated cases concerns an insured physician who purchased primary malpractice insurance, up to a given policy limit, from appellant Chubb/Pacific Indemnity Group (Pacific Indemnity) and excess insurance, for the same policy period, from respondent Insurance Company of North America (INA). The insured physician was sued for medical malpractice falling within the period of the Pacific Indemnity and INA coverage. Pacific Indemnity appointed an attorney to defend the physician and initially paid the defense costs, but later, while the litigation against the physician was still pending, Pacific Indemnity contacted INA, demanded that INA take over responsibility for the defense of the insured, and offered to pay its policy limit to INA if INA would accede to that demand. INA refused Pacific Indemnity's demands that it take over the defense, citing the relevant provisions from the INA and Pacific Indemnity insurance policies. Pacific Indemnity continued to defend the insured physician until either the case was settled or judgment was entered against the insured, but it brought the present actions against INA, claiming a right to reimbursement from INA for the attorneys' fees and litigation expenses incurred after it made demand upon INA to take charge of the defense.

Jury trial of the consolidated cases was waived and the matters were submitted for adjudication by the trial court upon agreed statements of facts and written trial briefs. The agreed statements of facts included the following:

In the first of the cases, a $437,821 settlement of claims against the parties' mutual insured, Dr. Austel, was reached after trial and the underlying action against Dr. Austel was dismissed on June 2, 1980. On February 8, 1979, during pendency of the litigation, appellant had sent a letter to respondent stating, "[W]e stand ready to cede our full policy limits of $100,000 to your company. . . . We expect that if you do not accomplish settlement within a reasonable time period, that you will then take over the responsibility for the future defense costs of this action." Appellant incurred $7,534 in defense fees and costs from the time it sent this letter until the case settled.

In the second case, suit was brought against the parties' mutual insured, Dr. Jacques, on October 1, 1971. On November 14, 1979, appellant sent respondent a letter "making available [its] policy limit of $100,000 for settlement purposes." On January 16, 1980, appellant sent a second letter to respondent stating, "if and when a defense verdict is realized, our present offer to extend to INA our $100,000 for settlement purposes shall be deemed immediately withdrawn."

Following a February 11, 1980, jury verdict against Dr. Jacques, judgment was entered against him in the amount of $821,000. Thereafter, Dr. Jacques informed the parties, in writing, that he wished to appeal the verdict against him. Appellant did not feel that an appeal was justified and refused to finance one. Respondent "had reasonable grounds to believe that an appeal was justified. . . ." Respondent paid Dr. Jacques' legal fees and costs on appeal. The judgment against Dr. Jacques was affirmed on appeal. Respondent thereupon made demand upon appellant for payment of $133,632.02 to the plaintiff in the Jacques lawsuit, representing appellant's policy limit of $100,000, the plaintiff's trial costs of $8,293.20, postjudgment interest thereon, and the plaintiff's costs on appeal of $4,561.37. Appellant paid $108,293.20, the policy limit, plus the plaintiff's trial costs, but refused to pay postjudgment interest or costs on appeal.

Respondent paid these amounts to the plaintiff in the Jacques action in satisfaction of the judgment against Dr. Jacques. Respondent then filed a cross-complaint against appellant in the within action to recover $4,561.37, the plaintiff's costs on appeal in the Jacques action, $20,877.45, postjudgment interest in the Jacques action, and $24,462 representing attorneys' fees and expenses on appeal incurred on behalf of Dr. Jacques.

In the third of the consolidated actions, suit was brought against the parties' insured, Dr. Innes, on April 20, 1976. On February 28, 1979, appellant sent respondent a letter "ceding our $300,000 policy limit to your company on the above file. . . . As we discussed . . . your company intends to try to negotiate a structured settlement on this case. . . . Since we are ceding our policy limits to you and thereby the control of this case, we are hereby asking that your company also take over the future defense costs on this matter, effective March 1, 1979." Respondent, by letter, denied any obligation to assume defense of Dr. Innes. The Innes case was tried and resulted in a jury verdict in favor of Dr. Innes on January 17, 1980. Appellant incurred $45,472.74 in attorney's fees and costs in defending Dr. Innes between March 1, 1979 and the date its file in the case was closed.

In the fourth of the consolidated cases, Ford Motor Company sued the parties' insured, Dr. Huston, on October 9, 1979, for indemnification for damages which Ford Motor Company had been ordered to pay to James Hasson in a separate lawsuit for personal injuries and which Ford Motor Company claimed were the result of medical malpractice by Dr. Huston.

On October 18, 1983, appellant sent respondent a letter making available its policy limit of $100,000 for settlement purposes and sought clarification of whether respondent preferred that appellant tender the policy limit directly to Ford Motor Company. The letter further requested that respondent assume complete defense of Dr. Huston. Respondent refused to do so. The suit against Dr. Huston was awaiting trial at the time the instant lawsuit was submitted for adjudication. Appellant had incurred legal fees and expenses of $49,668.78 as of the date the agreed statement of facts was prepared.

Each of the Pacific Indemnity policies involved in the present litigation includes the following pertinent provisions: "Defense, Settlement, Supplementary Payments [¶] As respects the insurance afforded by the other terms of the policy, as evidenced by this certificate, the *company shall*: [¶] (a) *defend* in his name and behalf *any* suit against the insured alleging such damages, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient provided, however, *no claim or suit shall be settled without the written consent of the individual named insured* whose rendering of or failure to render professional services either by himself or through an assistant caused the injury alleged; . . . . [¶] (c) *pay* all expenses incurred by the company, *all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability* thereon; . . . . [¶] *The amounts incurred under this insuring agreement,* except settlements of claims and suits, *are payable by the company in addition to the applicable limit of liability of the policy.*" (Italics added.)

Each of the INA policies involved in this litigation contains the following pertinent provisions: "C. The insurance afforded by this certificate shall follow that of the primary insurance except: [¶] (1) anything in this certificate or the primary insurance to the contrary notwithstanding, *INA shall not be obligated to assume charge of the settlement or defense of any claim or suit* brought or proceeding instituted against the Insured, *but INA shall have the right and be given the opportunity* to associate with the Insured in the defense

or control of any claim, suit or proceeding which appears reasonably likely to involve INA, in which event the Insured and INA shall cooperate in all things in the defense or control of such claim, suit or proceeding, but *no obligation shall be incurred on behalf of INA without its consent* being first obtained, however, in the event that the amount of the excess loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and INA, then, the Insured may pay the amount of excess loss to the claimant to effect settlement and, upon submission of due proof thereof, INA will indemnify the Insured for such payment, or, INA will, upon request of the Insured, pay such amount to the claimant on behalf of the Insured; (2) *the insurance afforded by this certificate shall not apply to any expenses for which insurance is provided in the primary insurance;* . . ."

In awarding judgment against appellant on its four consolidated complaints and in favor of respondent on its cross-complaint, the trial court made the following findings: "1. Based upon paragraph C of the INA policy and the applicable language of the Pacific Indemnity policy, Pacific Indemnity's tendering of its policy limits to INA did not create a duty in INA to assume the defense of the insured. [¶] 2. Paragraph C of the INA excess policy, given a fair and complete reading, was sufficient to exclude a duty on the part of INA to defend the insured under these circumstances. [¶] 3. Under the circumstances of the present case—that is, when the primary carrier has a duty to defend and the excess carrier does not, when the primary policy states that no suit may be settled without the insured's written consent, when the insured insists on an appeal and there are reasonable grounds for such an appeal—the primary carrier may owe a duty to appeal, on behalf of the insured, from a judgment that exceeds the amount of the insured's primary coverage limit."

CONTENTIONS ON APPEAL

■ Appellant contends that the quoted language of the INA policies does not exclude coverage for defense costs and that once appellant exhausted its policy limits by "ceding" them to defendant, it had an equitable right to have respondent assume the costs of defense. Appellant relies on *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75] (*Signal*); *Pacific Indemnity Co.* v. *Fireman's Fund Ins. Co.* (1985) 175 Cal.App.3d 1191 [223 Cal.Rptr. 312] (*Pacific Indemnity*); and *Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791 [129 Cal.Rptr. 47] (*Aetna*).[1]

---

[1] Appellant does not raise any separate issues related to the judgment on the cross-complaint.

All of these cases, however, are factually distinguishable in crucial respects from the case at bar. Furthermore, the cited case which sheds the most light on the instant matter, *Signal,* compels a result adverse to appellant.

*Aetna, supra,* 56 Cal.App.3d 791, involved multiple claims against the parties' mutual insured, Union Oil Co., arising as a result of an oil well blow-out in the Santa Barbara Channel. Aetna, the primary insurer, settled and paid out claims totaling $50,000, its policy limits. It sought reimbursement of defense costs incurred after that time. In the absence of language in the excess insurance policies which expressly and clearly excluded a duty to defend, the court found that Aetna had a right to reimbursement from the excess carriers for costs of defense incurred after payment of policy limits.

In *Pacific Indemnity, supra,* 175 Cal.App.3d 1191, a case involving multiple professional malpractice claims against an accounting firm, Pacific Indemnity, the primary insurer, paid policy limits of $1 million in settlement of one of the claims against its insured and then sought reimbursement of expenses from the excess carriers for costs incurred in defending claims following exhaustion of policy limits. The court in *Pacific Indemnity* found, as had the court in *Aetna,* that since the language of the excess carriers' policies did not expressly excluúe a duty to defend, the primary carrier was entitled to reimbursement of expenses incurred after exhaustion of primary policy limits.

*Signal, supra,* 27 Cal.3d 359, involved multiple claims arising out of the 1963 collapse of the Baldwin Hills dam. Pacific Indemnity was the primary insurer in that case also, insuring Signal Oil. Its policy limit was $25,000. Harbor Insurance provided excess coverage. Defense of claims against Signal was undertaken by Pacific Indemnity, which advised Harbor that claims against Signal could be settled for $35,000. Harbor agreed to contribute $10,000 in fulfillment of its excess coverage liability, and the matter was settled. During settlement negotiations, Pacific Indemnity had unsuccessfully sought contribution toward costs of defense from Harbor and pursued the matter via litigation after settlement of the Signal claims.

The Supreme Court held that Pacific Indemnity had a primary duty to defend until settlement. (27 Cal.3d at p. 365.) Pacific Indemnity contended that once the excess insurer has been given notice that claims against the insured might invade the excess coverage, and the amount of potential exposure is reasonably ascertainable, the excess insurer should immediately be obligated to participate in the defense. The Supreme Court rejected Pacific

Indemnity's position, saying it would make the excess carrier a coinsurer with the primary carrier, and that it would require the excess carrier to contribute to defense costs even though its liability might never attach. (27 Cal.3d at p. 370.)

Precisely the same considerations apply in the case before us. Appellant herein made its demands upon respondent at a time when respondent's liability had not attached and when appellant's obligations under its policies had not been satisfied. Ceding policy limits to respondent for purposes of settlement did not exhaust appellant's obligation to pay damages on behalf of its insured. That obligation could have been extinguished only by actual settlement or payment of judgment. That appellant's offer to cede was not unconditional is made manifest both by appellant's January 16, 1980, letter in the Jacques case indicating that appellant's offer would be withdrawn in the event of a defense verdict, and by the fact that appellant paid no damages under the policy following the defense verdict in the Innes case. Of course, respondent's liability never attached in the Innes case and had yet to attach in the Huston case when the instant case came to trial.

The initial premise of appellant's position on appeal, exhaustion of its policy obligations, thus fails. ■ Appellant fares no better in its second argument, that it was equitably entitled to have respondent assume the costs of defense.

In the first place, the excess coverage policies in the instant case expressly exclude the obligation to assume responsibility for defense, while reserving a right to do so if respondent so wishes. Respondent's policies further exclude coverage for expenses covered by primary insurance. Appellant's policies impose a duty to defend all claims, not just those within policy limits, and expressly provide that costs of defense are payable in addition to policy limits.

Clearly, the respective policy premiums charged were predicated on the respective obligations assumed by the carriers.[2] If appellant's position were adopted, it would mean that any primary insurer which contracted to provide a defense in addition to policy limits could walk away from that obligation, whenever the insured had excess coverage, by simply acknowledging its separate contractual duty, to pay policy limits upon settlement or judg-

---

[2]In its written rebuttal argument to respondent's trial brief, appellant objected to any consideration of this factor because it was not included in the agreed statements of facts. The only reasonable inference which may be drawn from the facts, however, is that premiums were based upon the insurer's liabilities.

ment, a highly inequitable result. We see no equitable basis for relieving appellant from the contractual obligations it freely assumed and imposing them on respondent which contractually avoided them.

The judgment is affirmed.

Hastings, J., and Eagleson, J., concurred.