INTERSTATE FIRE & CASUALTY
CO., Plaintiff–Appellant,

v.

STUNTMAN INC.; Hal Needham, Heidi
Von Beltz, Defendants–Appellees.

No. 87–5655.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided Aug. 5, 1988.

As Amended on Denial of
Rehearing Nov. 7, 1988.

Jack M. Staitman, Staitman & Snyder, Encino, Cal., for plaintiff-appellant.

Harvey A. Schneider and Steven W. Murray, Encino, Cal., for defendants-appellees Stuntman, Inc., and Hal Needham.

Haskell J. Shapiro and Belli & Sabih, Beverly Hills, Cal., for defendant-appellee Heidi von Beltz.

Before PREGERSON, CANBY and WIGGINS, Circuit Judges.

PER CURIAM:

Interstate Fire & Casualty Co. appeals the district court's grant of summary judgment in favor of defendants Stuntman, Inc., et al. on the ground that the district court misinterpreted certain provisions of the excess commercial liability policy it issued to Stuntman.  We affirm.

## BACKGROUND

In August 1979, Interstate issued an excess insurance policy to Stuntman, the company providing stunt services for the producers of the film "Cannonball Run." The policy provided coverage in the event that Stuntman's liabilities exceeded certain primary insurance coverage or benefits. In June 1980, Heidi Von Beltz, a stuntwoman working on the film, was involved in an accident that left her a quadriplegic. Von Beltz sued Stuntman and others for the injuries she sustained. A jury trial culminated in a $7 million damages award. The verdict was reduced to approximately $4.6 million as a result of Von Beltz' contributory negligence. That result is being appealed, so the possibility remains that liability could exceed primary insurance coverage or benefits. Interstate subsequently filed a complaint in federal district court seeking a declaratory judgment that even if Von Beltz' recovery exceeded the primary insurance or benefits, it had no duty to indemnify or to defend Stuntman under the policy. Interstate's claim was based on an exclusion in the policy for bodily injury to performers. The district court granted Stuntman's motion for summary judgment. This appeal followed.

## DISCUSSION

### 1. The Duty to Indemnify

The primary question in this case is whether Interstate's policy provides some coverage for personal injuries to performers that does not fall within the terms of the exclusion. The policy provided that Interstate would indemnify Stuntman "for all sums which the insured shall become obligated to pay as damages, direct or consequential, by reason of liability (a) imposed upon the insured by law, or (b) assumed by the name insured ... *because of personal injury....*" The policy defined personal injury as "(a) bodily injury, shock, sickness or disease (including death, mental anguish and mental injury resulting therefrom)." An endorsement to the policy limited the scope of personal injury coverage: "It is agreed that this policy does not apply to *Bodily Injury* to participants including,

but not limited to, actors, actresses, extras, producers, directors, independent contractors...." The district court ruled that the term "personal injury" as used in the coverage portion of the policy encompassed four separate types of injury: bodily injury, shock, sickness, and disease. The policy endorsement excluded only "bodily injury" coverage for performers. The district court therefore concluded that Interstate had a duty to indemnify Stuntman for claims arising as a result of shock, sickness or disease, in addition to any mental injuries resulting from shock, sickness or disease.

Interstate contends that the district court erred in finding a duty to indemnify for mental injuries sustained as a result of non-bodily injuries since the bodily injuries and mental suffering are interrelated as a matter of law. We disagree. Emotional or mental injuries are not inextricably linked to bodily injury under California law. *See e.g., Abellon v. Hartford Ins. Co.,* 167 Cal. App.3d 21, 212 Cal.Rptr. 852, 857 (1985) (affirming wife's recovery of damages for emotional and mental injuries resulting from loss of consortium even though her injuries were not caused by the bodily injuries to her husband); *Employers Cas. Ins. Co. v. Foust,* 29 Cal.App.3d 382, 105 Cal. Rptr. 505, 508 (1972) (affirming recovery of damages for emotional distress under policy excluding coverage for emotional or mental distress resulting from bodily injuries).

Nor did the district court err in concluding that the policy ambiguously treated mental injuries resulting from non-bodily injuries. Under California law an insurer cannot avoid its primary duty to provide coverage by incorporating into an insurance policy an exclusionary policy clause that is ambiguous. *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1079 (9th Cir.1985); *State Farm Mut. Ins. v. Jacober,* 10 Cal.3d 193, 110 Cal.Rptr. 1, 514 P.2d 953, 958 (1973) (en banc). Exceptions to the basic, underlying contract obligation must be clearly stated to apprise the insured of the effect of those excep-

tions. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 172 (1966) (en banc). Had Interstate intended to exclude coverage for all forms of personal injury set out in the coverage section, the exclusionary clause should have been written more precisely. Alternatively, Interstate should have used the same term in the policy's coverage and exclusionary provisions.

Although we find that Interstate has a duty to indemnify Stuntman under the policy, we do not think it should be required to cover the entire amount of Von Beltz damages in excess of Stuntman's primary insurance coverage or benefits. It is undisputed that any damages recovered against Stuntman for Von Beltz' bodily injuries, including any mental injuries or anguish resulting therefrom, are not covered under the policy. Interstate must therefore indemnify Stuntman only for the portion of the award compensating Von Beltz for mental injuries or anguish resulting from shock, sickness or disease. The portion of the jury's general verdict attributable to mental injuries and anguish resulting from non-bodily injuries should be determined in supplemental hearings in the district court.

### 2. The Duty to Defend

Interstate also contends that the district court erred in ruling that it had a duty to defend Stuntman upon the exhaustion of Stuntman's primary insurance. Paragraph D of the Conditions Section of the policy provided that:

> The insured shall be responsible for the investigation, settlement or defense of any claim made or suit brought or proceeding instituted against the insured which no underlying insurer is obligated to defend....
> The company shall have the right and shall be given the opportunity to associate with the insured or its underlying insurers, or both, in the defense and control of any claim, suit or proceeding which involves or appears reasonably likely to involve the company.

Interstate argues that this provision established only an optional duty to defend. Un-

der California law, however, an insurer's implied duty to defend may not be waived absent an explicit provision to that effect:

> [T]he law imposes an implied obligation to defend where it is not expressly and clearly omitted from the particular risk.... [I]f the exclusion is unclear or uncertain and is reasonably to be expected by the insured the obligation will be implied by law and included as part of the agreement.

*Aetna Cas. & Sur. Co. v. Certain Underwriters*, 56 Cal.App.3d 791, 129 Cal.Rptr. 47, 53 (1976) (declining to find that excess insurer had only optional duty to defend absent "clear and certain statement in their policies").

Interstate relies on *Chubb/Pacific Indem. Group v. Insurance Co. of N. America*, 188 Cal.App.3d 691, 233 Cal.Rptr. 539 (1987), where the court held that the excess insurer did not have a duty to defend under a policy containing the following provision:

> INA *shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured,* but INA shall have the right to and be given the opportunity to associate with the insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve INA.

*Id.* at 541. (Emphasis supplied). In contrast, the Stuntman policy contains no such explicit reservation of rights. First, the provision at issue refers to claims where "no underlying insurer is obligated to defend" but does not mention situations such as this one where an underlying insurer's initial obligation to defend has been exhausted. Second, the reservation of rights provision permits the insurer to associate with the insured in the defense and control of any claim "which involves or appears reasonably likely to involve the company." That language certainly applies to a situation such as this one where the primary insurance policy limits may well have been reached and the excess insurance policy triggered.

We conclude that the policy's reservation of rights provision was not sufficiently explicit to put Stuntman on notice that Interstate had no duty to defend in this case. *Davis v. Blue Cross of N. Cal.*, 25 Cal.3d 418, 158 Cal.Rptr. 828, 600 P.2d 1060, 1065 (1979) (en banc) (the insurer has the duty "reasonably to inform an insured of the insured's rights and obligations under the insurance policy"). An exclusion in an insurance policy must be conspicuous, plain and clear. *See Ponder v. Blue Cross of S. Cal.*, 145 Cal.App.3d 709, 193 Cal.Rptr. 632, 637 (1983). The fact that Interstate used a standard policy form does not excuse any ambiguities in the Stuntman contract, because ambiguities are construed against the insurer. *Hanson v. Prudential Ins. Co. of America*, 783 F.2d 762, 764 (9th Cir.1985). "How simple it would have been to amend the standard language—to say clearly that insurer and insured agree that the insurer shall not be required to defend any claim." *Aetna*, 129 Cal.Rptr. at 531. The district court did not err in ruling that Interstate had a duty to defend under the policy once Stuntman's primary insurance policies were exhausted.

AFFIRMED.

CANBY, Circuit Judge, dissenting:

I dissent from the court's conclusion that the policy's exclusion for "bodily injuries" to participants does not encompass all of the injuries sustained by Von Beltz. Von Beltz and Stuntman concede that the exclusion precludes recovery for the bodily injury itself, as well as for mental and emotional distress resulting from bodily injury. In my view, that includes all of the injuries suffered by Von Beltz.

The district court and the majority of this court conclude that, despite the exclusion for bodily injury, Von Beltz can recover for "shock" (there being no sickness or disease) and the mental and emotional distress resulting from shock. Under the facts of this case, I am unable to comprehend damages for injuries from shock that are not damages from bodily injury. There was only one accident, and all damages result from the terrible bodily injuries Von Beltz suffered in it.

My view is reinforced by the rather obvious intent of Interstate's policy to cover liability for injuries to the public and to exclude liability for injuries to participants. I agree with the majority that exclusions are to be strictly construed against the insurer that drafted the policy, but I can sensibly construe this exclusion only one way. I would therefore hold that there is no excess coverage for Von Beltz' injuries.