[No. B007261. Second Dist., Div. Four. Dec. 20, 1985.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Respondent, v. FIREMAN'S FUND INSURANCE COMPANY et al., Defendants and Appellants.

**COUNSEL**

Lewis, D'Amato, Brisbois & Bisgard, Robert F. Lewis, Joseph M. Andrews, German, Gallagher & Murtagh, Michael D. Gallagher and Edward C. German for Defendants and Appellants.

Hufstedler, Miller, Carlson & Beardsley, John Sobieski and David Colburn for Plaintiff and Respondent.

**OPINION**

**McCLOSKY, J.**—Fireman's Fund Insurance Company, a corporation, and Stonewall Insurance Company, a corporation (hereafter sometimes collectively referred to as appellants or excess carriers), appeal from a judgment against them and in favor of Pacific Indemnity Company, a corporation (hereafter sometimes referred to as Pacific and sometimes as respondent or primary carrier).

FACTS

Respondent provided primary professional liability insurance to the accounting firm of Laventhol, Krekstein, Horwath & Horwath (hereafter Lav-

enthol) for the policy period August 26, 1972, to August 26, 1973. Appellants are two of many insurance carriers who provided excess insurance to Laventhol for this same policy period. Upon their agreeing to be bound by the outcome of this case, the other excess carriers were dismissed from this action.

Various professional liability claims were made against Laventhol during the coverage period of the policies. Pacific provided a legal defense to Laventhol and in so doing incurred legal costs and attorneys fees. On September 2, 1985, Pacific settled one of the claims against Laventhol by paying its aggregate indemnity limit of $1 million.

Respondent's policy provided that it would pay the costs of defense "in addition to the applicable limit of [the primary company's liability]." Having paid its limit, Pacific then sought to have the excess carriers defend the unresolved claims made against Laventhol during the applicable policy period.

The excess carriers, although ultimately paying more than $4 million in indemnity to settle other claims against Laventhol, declined to assume the duty to defend or the cost of defense, contending that respondent was obligated to defend under the express terms and conditions of its policy and that the costs of defense were not within the coverage of the excess policies. Thereafter, respondent Pacific continued to defend the outstanding claims under a reservation of its right to seek reimbursement from the excess carriers for the costs thereof.

Pacific's third amended complaint sought resolution of the questions of whether the excess carriers had an obligation to pay any part of the costs of defense after Pacific exhausted its indemnity limits and, if so, as to the allocation of those costs of defense.

The case was tried in the Los Angeles Superior Court upon a stipulation of facts. The parties agreed that only relevance objections could be interposed as to the admission into evidence of any of the stipulated facts. Prior to trial Pacific submitted relevance objections to the admission of certain paragraphs of the stipulation of facts. The trial court deferred its ruling on those objections until conclusion of the trial, then sustained them and entered judgment in favor of Pacific. Appellants' timely appeal followed.

### CONTENTIONS

Appellants contend that:

"1. The trial court must be reversed and judgment entered in favor of appellants because the court erroneously based its decision on *Aetna* v.

*Certain Underwriters at Lloyds* [1976] 56 Cal.App.3d 791, and thereby failed to reach the question, as is required by the Supreme Court decision in *Signal Cos.* v. *Harbor Insurance Co.* [1980] 27 Cal.3d 359, of whether there exist 'compelling equitable considerations' which would or could justify the imposition of the costs of defending an insured upon the [excess carriers] in contravention of the clear and explicit language of their policies to the effect that said excess insurers will not pay such costs in the circumstances here presented.

"2. The trial court must be reversed and judgment entered in favor of appellants because there exist no 'compelling equitable considerations', as required by *Signal*, which would or could justify the imposition of the costs of defending the insured upon the [excess carriers] in contravention of the clear and explicit language of their policies to the effect that costs of defense would not be paid by the excess carriers in the circumstances here presented.

"3. The trial court must be reversed and judgment entered in favor of appellants because the court refused to admit into evidence certain paragraphs of the Stipulation of Facts bearing on the interpretation of the policy of primary insurance given by appellee-primary [*sic*] insurer and relevant to the question of whether there exist 'compelling equitable considerations' which would or could justify the imposition of the duty and costs of defending the insured upon the [excess carriers] in contravention of said interpretation and the language of the excess policies."

DISCUSSION

I

Appellants initially assert that *Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d 791 [129 Cal.Rptr. 47], has been implicitly overruled by the case of *Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d 359 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75], and is inconsistent with salutary principles of California law and well established precedents of other jurisdictions.

The short answer to that assertion as concerns the law in this state is that *Signal* neither expressly nor implicitly overrules or disapproves of *Aetna*. It plainly distinguishes it. (See *Signal, supra,* at pp. 366-367.) In *Signal* as distinguished from *Aetna* and the case at bench, the primary carrier inequitably sought to recover costs which were almost entirely incurred by it in defense of its insured *before* the exhaustion of its primary limits. Further, in *Aetna* the primary carrier sought reimbursement for the costs of defense

after its limits of indemnity coverage were paid out, while in *Signal* the primary carrier sought recovery of costs of defense incurred *before* the exhaustion of its limits.

## II

Appellants contend that the rule in *Signal* is that absent "compelling equitable circumstances" the trial and appellate courts must resolve disputes between primary and excess carriers by enforcing the specific language of each carrier with its respective insured. They apparently base that contention on language in *Signal* which reads that "[t]o impose an obligation on Harbor to reimburse Pacific in contravention of the provisions of its policy could only be justified, however, by some compelling equitable consideration. We find no such consideration here. Before seeking Harbor's contribution to the settlement, Pacific acted in all respects for its own benefit. The defense costs at issue were incurred by Pacific in the performance of its contractual obligation to its insured to afford a defense. The expenses were incurred almost entirely prior both to settlement of the litigation and exhaustion of Pacific's policy coverage. As we have noted, Pacific bore the primary obligation to defend and to protect both its insured and, through subrogation principles, the excess carrier from excess liability. [Citation.]" (*Signal Companies, Inc. v. Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.)

Appellants' argument in this regard also ignores the language of the *Signal* majority "expressly declin[ing] to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers. (Cf. *Gray* [1966] 65 Cal.2d [263] at pp. 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].)" (*Signal Companies, Inc. v. Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.)

The *Signal* majority then went on to restate the well recognized rule governing the reciprocal rights and duties of several insurers who have covered the same event in the following language.

■ "[W]e affirm the wisdom expressed in *Amer. Auto Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84]: 'The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the

respective policy holders.' (See also *National American Ins. Co.* v. *Insurance Co. of North America, supra,* 74 Cal.App.3d [565] at p. 577 [140 Cal.Rptr. 828].)" (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra,* 27 Cal.3d at p. 369.)

Thus, *Signal* once again reaffirms the well recognized principle that the rights and duties of several insurers who have covered the same event but who have not contracted with each other with respect to it, are not the same to one another as they are to their respective insureds. They are, instead, governed by and "flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden."

Appellants call our attention to the obligation of the primary carrier to its insured Laventhol. That obligation to defend is unquestionable, and, if there were no other available insurance present carrying a duty to defend, our inquiry would end there with Pacific's obligation to Laventhol. But appellants' excess policies do exist and obligate them to defend Laventhol. We are therefore thrown back to the aforesaid equitable considerations to determine the respective obligations of the carriers among themselves to provide for and pay for the defense unless clear and explicit language in appellants' policies existed which excluded the duty to defend under the circumstances of this case. We shall hold that such language did not exist.

Moreover as respondent correctly points out: "*Aetna* and *Signal* deal with different problems. ■ *Signal* states the general rule that an excess carrier is not normally responsible for any of the costs of defense incurred before the primary coverage is exhausted, while *Aetna* holds that an excess carrier has a duty to defend after the primary coverage is exhausted unless the excess policy provides to the contrary. As the court in *Olympic Ins. Co., supra,* recognized, both cases are based on the same basic rule—that defense costs must generally be shared in proportion to the payment of the loss, in the absence of policy provisions dictating a contrary result. See 126 Cal.App.3d 593, at 602. In short, there is no conflict between the two decisions."

### A

Appellants maintain that "the clear and explicit" language of their policies preclude any duty on their part to pay the defense costs for which the trial court held them responsible. Both excess policies, in the same words, state:

"The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of

liability), conditions and exclusions as are contained in the primary insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to the following:

"(a) premiums;

"(b) the obligation to investigate and defend;

"(c) the amount and limits of liability;

"(d) any renewal agreement."

These excess policies then set forth the duties of the excess carriers with respect to "Payment of Costs," not the duty of defense,[1] as follows:

"1. PAYMENT OF COSTS.

"(a) In the event of claim or claims arising which are terminated by settlement or judgment for not more than the primary limits, then no costs shall be payable by the Company.

"(b) Should, however, the amount of settlement or judgment for which such claim or claims are terminated exceed the primary limits, such costs as are incurred personally by the insured with the written consent of the Company and which are not covered by primary insurance will be paid by the Company. Provided, however, that payment of interest shall be limited to interest accruing after entry of judgment on such part thereof as does not exceed the Company's limit of liability thereon, until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon."

From the misquotation of this language, appellants argue that there are three specific conditions precedent in their policies to their duty to pay any defense costs. These, according to them, are that:

"(1) The costs must be incurred personally by the insured; (2) [s]uch costs must be incurred with the written consent of the excess carrier; and (3) [s]uch costs must not be covered by the primary insurance."

---

[1]Appellants at page 8 of their opening brief misquote this provision to make it read: "PAYMENTS OF COSTS. (Defending the Insured)." Neither the set of parenthesis nor the words "Defending the Insured" appear in the actual language of that paragraph of the policy appellants attached as exhibit A to the agreed statement on appeal. We, of course, consider the *actual* language of their policies, not the language misquoted in appellant's brief.

The actual policy provisions, as distinguished from the language misquoted by appellants in their opening brief, do not contain the "Defending the Insured" language. It is on that misinterpretation that appellants premise their argument that their policies contain "clear and explicit" language which impose the aforementioned conditions precedent and the express preclusion of any duty of defense on their part.

*Aetna*'s teaching is that excess carriers have an implied duty to defend in these circumstances unless that duty is clearly and expressly excluded by their policy language:

"[T]he law imposes an implied obligation to defend where it is not expressly and clearly omitted from the particular risk. The legion of cases holding insurance carriers to the duty to defend . . . imposes duties implied by law in addition to the duties expressly bargained for and set forth in the written contracts of insurance. . . . [Citations.]" (*Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d at pp. 800-801.)

The *Aetna* court in ruling on policy language substantially similar to that involved here then went on to state: "Appellants do not demonstrate or direct our attention to any clear and certain statement in their policies that they will not defend against any claims. Hence, by the same considerations by which they urge us to view the responsibilities and obligation of Aetna to Union, we find that appellants as insurers have a coexisting and coequal obligation to defend as representatives and on behalf of the insured Union, with reference to all of the excess claims." (*Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d at p. 801.)

Neither the *Aetna* excess policy language nor the excess policy language here involved exclude the excess carriers' implied duty to defend the excess claims involved once the primary policy limit is exhausted. Those policies, in effect, merely state that the insurance they provide is subject to the same terms, conditions and exclusions as are contained in the primary policy, except that they provide (a) that in the event of a claim or claims which are terminated by settlement or judgment for not more than the primary limits, then no *costs* shall be payable by the excess companies and (b) that where the amount of settlement or judgment exceeds the primary limits, such costs as are personally incurred by the insured with the written consent of the excess company concerned and which are not covered by the primary insurance, will be paid by the two excess companies.

The *Aetna* court's conclusion that the excess policies did not exclude the implied duty of those carriers to defend the *excess* portion of the claim and

that they had such duty to defend, is just as applicable to the duty to defend, and pay for the defense of, the excess claims in the case at bench.

## B

Here, Pacific provides coverage for only the first $1 million of exposure and had paid that entire amount. The appellant excess carriers provided coverage for millions more. To hold that Pacific would have to provide for a defense of the insured's interests and the interests of the excess carriers above Pacific's $1 million primary limit in the face of the excess carrier's greater indemnity limits for which Pacific would not be liable would be unreasonable. The excess carriers should be more readily prepared to assume the additional burden of the large defense expenses on the excess coverage exposure. (See *Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d at p. 804, and *Wint* v. *Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 263 [107 Cal.Rptr. 175, 507 P.2d 1383, 9 A.L.R.3d 1185].)

■ Also supporting the *Aetna* principles is the noncontrolling, but persuasive, case of *Molina* v. *United States Fire Ins. Co.* (9th Cir. 1978) 574 F.2d 1176, in which the court stated that the excess carrier was not required to pay defense costs where the primary carrier was bankrupt "unless any judgment . . . exceeded the amount of $100,000.00 [the primary limits]," and that if the judgment did not exceed the primary limits, the excess carrier "would be responsible for only that part of the costs and fees in proportion to the amount that any such judgment exceeded the limits of the primary policy coverage." (*Molina, supra,* at p. 1178.) This is the rule adopted by *Aetna,* and the rule that was applied by the trial court in the case at bench.

Appellants' argument that the *Aetna* rule might leave an insured such as Laventhol without defense protection once the primary and excess limits had been exhausted is specious in a case such as this, where there was no express language relieving the carriers of such a duty to defend. We are not called upon to, and we do not, decide what the outcome would have been had there been such express language in the policies.

## III

Appellants next contend that the trial court committed reversible error in sustaining Pacific's objection to the admission into evidence of paragraphs 18 through 29 of the stipulation of facts and exhibits 20, 21, 22 and 25 through 38 which they claim bear on the interpretation of the primary insurance policy and are relevant to the question of "whether there exist 'compelling equitable considerations' which would or could justify the im-

position of the duty and costs of defending an insured upon the appellant-excess [carriers] . . . ."

■ We first note that as to the "compelling equitable considerations" arguments, our ruling that *Aetna* governs this case is actually dispositive of that issue, but we are also convinced that the sound equitable principles which govern the relation of the involved carriers and the unambiguous policy language involved preclude the relevancy of the stipulated paragraphs in question.

The policy language involved is clear and unambiguous and needs no interpretation or construction. The trial court correctly ruled that the evidence excluded was irrelevant to the issues before the court.

### A

■ Paragraphs 18 through 22 of the stipulation of facts describe respondent's claims loss and expense experience and premium income on the account's professional liability insurance it had in effect for the years 1973 through 1977. They also show that Pacific had only exhausted its primary limits in two of those years and had sought but not yet received reimbursement of defense costs for those two years. Lastly, they showed that there had been no sharing of profits, losses or expenses between the primary and excess carriers during those years.

This evidence was clearly irrelevant to respondent's rights against appellants. ■ The duty to defend, whether implied or express, once undertaken by writing the policy, is not dependent on the profitability of insuring a class of risks or the specific risk. ■ Similarly whether respondent had or would ever be reimbursed by excess carriers is not relevant to the determination of the duties of the parties in this case.

### B

Paragraphs 23 through 29 of the stipulation of facts and exhibits 25 through 38 relate to subsequent revisions in the language of accountant professional liability policies later issued by respondent. Exhibits 25 through 36 are Pacific's internal memoranda and correspondence relating to correspondence, conversations and meetings that preceded these changes in the policy form. Exhibits 37 and 38 are copies of Pacific's policies extant in 1973 and 1976. None of this evidence had any relevance in this case for

the reasons stated above. (See also *McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 777-778 [193 Cal.Rptr. 745], holding subsequent policy revisions irrelevant.)

A Pacific internal memorandum to file dated September 5, 1972, by one D. S. Decxtor commenting on "CPA/CPI Policy wording—Chuck Ryan's letter of August 30, 1972" does contain Decxtor's recommendation as to what wording should be in the policy form but there is no showing that this opinion was the view Pacific had then adopted, that Decxtor was in a position to make policy for Pacific or that it was intended to, or would govern the duty to defend relationships with excess carriers. In short, this evidence was totally irrelevant.

## C

Appellants' contention that three letters by Pacific personnel in 1977 and 1980 constitute an admission that Pacific had a duty to pay the costs of defense is without merit. By the time the statements in them were made, respondent had already paid its policy limits under a reservation of its rights and had already asked the appellants to assume the defense and costs of defense of the insured. It had also notified them that it intended to seek reimbursement of its defense costs incurred in the further defense of its insured. Each of those actions was inconsistent with appellants' claim that the evidence it unsuccessfully sought to introduce was relevant to Pacific's interpretation of the language of its policy of insurance. Obviously the policies of insurance involved were contracts. The opinion evidence appellants sought to introduce is completely irrelevant to the interpretation of the insurance contracts.

As was stated in *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 709-710 [39 Cal.Rptr. 64], quoting *Achen* v. *Pepsi-Cola Bottling Co.* (1951) 105 Cal.App.2d 113, 123 [233 P.2d 74]: " '[T]he exception to the hearsay rule which permits declarations or admissions by a party to be shown applies only to declarations or admissions of *fact* and not to the interpretation, legal or otherwise of the facts.' (P. 123.) The *Achen* case holds that the views expressed by a party as to what he intended or thought the meaning of a contract to be are inadmissible as his opinion or conclusion, where the factual language of the contract on which the action is based is equally available and known to the parties and its interpretation is a matter for the court."

The trial court did not err in its ruling excluding the evidence concerned.

The judgment is affirmed.

Woods, P. J., and Arguelles, J., concurred.

The petition of appellant Stonewall Insurance Company for review by the Supreme Court was denied March 12, 1986.