**COUNTY OF SANTA CLARA, Plaintiff,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, et al., Defendants.**

**No. C93–20169.**

United States District Court, N.D. California.

June 17, 1994.

Jones, Day, Reavis & Pogue by Patricia A. Van Dyke, Los Angeles, CA, Bullivant, Houser, Bailey Pendergrass & Hoffman by James

G. Driscoll, Rancho Cordova, CA, Kathryn Berry, Deputy County Counsel, County of Santa Clara, San Jose, CA, for plaintiff.

Luce, Forward, Hamilton & Scripps by Harvey T. Elam, San Francisco, CA, for defendant Employers Reinsurance Corp.

Robinson & Wood by Mark B. Schellerup, San Jose, CA, for defendant Stonewall Ins.

Hancock, Rother & Bunshoft by Max H. Stern, San Francisco, CA, for defendants Gibbs & Companies.

Haims, Johnson, MacGowan, & McInerney by Edward D. Baldwin, Oakland, CA, for defendant Uniguard.

Rivkin, Radler & Kremer by Christopher Crevasse, Santa Rosa, CA, for defendant Chicago Ins.

## ORDER GRANTING SUMMARY JUDG-MENT AND DETERMINATION OF GOOD FAITH SETTLEMENT

WARE, District Judge.

Plaintiff County of Santa Clara ("County") and Co–Defendant United States Fidelity and Guaranty Company ("USF & G") together move for partial summary judgment against Co–Defendant Employers Reinsurance Corporation ("ERC") and USF & G alone moves for a Court determination that the comprehensive settlement agreement between the County and USF & G has been made in good faith within the meaning of California Code of Civil Procedure section 877.6. The two motions were submitted to the Court for determination after oral argument was heard on May 20, 1994.

### I.  BACKGROUND

This action arises out of the alleged mercury contamination of the Almaden Quicksilver County Park ("the Park"). The County purchased six parcels of Park property on July 19, 1973. The County purchased another three parcels of Park property on June 20, 1975. The County has alleged that the Park has been damaged by mercury contamination during the Defendants' policy periods. The County is subject to a Remedial Action Order ("RAO") issued by a California environ-mental agency in 1987. The RAO calls for the County to remediate the property damage in the Park at an estimated cost of $1.8 to $7 million.

In March 1993, after tendering defense of the environmental action to its insurers, the County filed a Complaint against USF & G, the primary insurance carrier for the County regarding this dispute, and other umbrella and excess insurers, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief.

On November 1, 1993, the Court entered partial summary judgment in favor of the County and against USF & G. The Court found that USF & G had a duty to defend the County and to pay the County's post-tender defense costs.

Subsequently, the parties were directed to meet with Magistrate Judge Edward A. In-fante to determine the amount of post-tender defense costs. After the conference with Magistrate Judge Infante, the County and USF & G agreed to a three-part settlement. The settlement resolved 1) the issue of post-tender defense costs, 2) the bad faith claim, and 3) that the County will settle all other claims against USF & G in exchange for $500,000—USF & G's maximum potential property damage indemnity obligation. However, this third part of the settlement is conditional upon the County and USF & F receiving favorable rulings from the Court on the two pending motions, i.e., that the above-described settlement was made in good faith, and that the County is now entitled to a defense by ERC under the terms of the ERC umbrella policy.

At Judge Infante's suggestion, USF & G has deposited the $500,000 into an escrow account. If the Court grants these two motions, the money will be released to the County, and USF & G hopes to "walk away" from the dispute, leaving the County to be defended by ERC. If the Court denies these motions, the funds will be returned to USF & G and the third part of the settlement will have failed.

ERC opposes both motions, and the opposition has been joined by Co–Defendants Ca-

ryl Anthony Vaughn Gibbs and Companies (sued and served as Certain Underwriters at Lloyd's of London, Stronghold Insurance Company Limited, Yasuda Fire & Marine Insurance Company (U.K.) Limited, Turegum Insurance Company, Excess Insurance Company Limited, Assicurazioni Generali).

## II. *THE ANOMALY OF ENVIRONMENTAL "SETTLEMENTS"*

This action puts a unique twist on the common legal issue of good faith settlements and the duty to defend. In a typical tort action, there is usually a "claim" for a knowable amount of "damages," or a "judgment" that can be settled or satisfied. The judgment or settlement is paid to the third party claimant and this amount, along with the costs of defense, are tendered to the insured's primary insurer.

In this case, technically speaking, there is no "settlement," and there may never be one. The County is under an obligation to comply with the state-issued RAO. The estimated clean-up costs and oversight fees are between $1.8 to $7 million dollars. While the County may recover some amount of money in the form of contribution from previous owners and/or polluters of the property, at this moment, the County is liable for the costs of remediation.

In order to obtain money to pay for part of the remediation, the County has agreed to settle its claim with USF & G for the full $500,000 policy limit and for reimbursement of all post-tender defense costs through the date of the settlement. In exchange, USF & G believes it will have extinguished its defense and indemnity obligations to the County. The County, caring only that *some* party provide defense and indemnity, is now looking to ERC to acknowledge its obligations.

## III. *ANALYSIS*

In *Aetna Casualty v. Certain Underwriters*, 56 Cal.App.3d 791, 129 Cal.Rptr. 47

(1976), the primary insurer paid the insured's defense costs until its liability limit had been exhausted. The primary insurer then informed the insured's excess insurers that they were responsible for the insured's defense. The court rejected the excess insurer's contention that the primary insurer was the only company on the risk for defense costs, stating:

> Whatever [the primary insurer] did after the payment of the [liability limit] and the payment of costs and defense expenses relative to that amount and up to that point, it did so in the capacity of [the policyholder's] representative and became equitably subrogated to the rights of [the policyholder] under [the policyholder's] contracts with [the excess insurers]. Thus, the obligation imposed on [the excess insurers] by the rule of reasonable expectations of [the policyholder] inure to the benefit of [the primary insurer].

*Id.* at 801, 129 Cal.Rptr. 47.

Similarly, in *Pacific Indem. Co. v. Fireman's Fund Ins. Co.*, 175 Cal.App.3d 1191, 223 Cal.Rptr. 312 (1985), the primary insurer assumed the policyholder's defense costs up to the time is exhausted its indemnity limit. In finding the excess insurers on the risk for subsequent defense costs, the Court of Appeals ruled:

> [The primary insurer's] obligation to defend is unquestionable, and if there were no other available insurance present carrying a duty to defend, our inquiry would end there with [the primary insurer's] obligation to [the policyholder]. But [the] excess policies do exist and obligate [the excess insurers] to defend [the policyholder].

*Id.* at 1198, 223 Cal.Rptr. 312.

Interestingly, in *Pacific Indemnity*, the court found the excess insurer had an implied duty to defend the policyholder. In this case, the ERC policy explicitly states that it will defend the County when underlying coverage has been exhausted.[1] There is no need to

---

1. ERC's reliance on *Signal Companies v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980) is misplaced. In that case, the excess insurer's policy explicitly denied any duty

to defend unless the excess insurer agreed to a "continuation of the proceedings." Here, ERC's policy states:

imply ERC's duty to defend. Thus, the relevant question is, "Has the primary insurance been exhausted?"

USF & G argues that because it has paid all defense costs through the date of its settlement with the County, and has tendered its full policy limit into escrow pending resolution of these motions, it has exhausted all its obligations to the County and the excess insurer must step forward and provide a defense for the County. ERC's excess policy contains a provision on this exhaustion requirement:

> Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer [USF & G], shall have paid the amount of the Insured's primary limit on account of such occurrence. The Insured shall make a definite claim for any loss for which the Corporation may be liable under this policy within 12 months after the Insured shall have paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Corporation.

The ERC policy defines "ultimate net loss" as:

> ... [T]he total sum which the Insured, or any company as his insurer, or both, become obligated to pay as damages because of personal injury or property damage, either through adjudication or compromise with the written consent of the Corporation.

Based on this language, ERC contends primary coverage has not been exhausted and its duty to defend has not yet arisen, and may never arise, because 1) USF & G has not actually "paid" any money to the County, and 2) the County has not shown that it is liable because there has been no "final judg-

ment against the Insured after trial" or any other "adjudication" of liability.

### A. *Payment*

■ ERC argues that USF & G's tender of its policy limit into escrow is "conditional," "collusive," and constitutes merely an "artificial exhaustion." The Court does not find this argument persuasive. The settlement between the County and USF & G resulted after several hours of arduous negotiation directly supervised by Magistrate Judge Infante. The objection to the use of an escrow account is not well taken given the fact that there has been no showing made that if these motions were granted, the money would not, in fact, be released to the County. Accordingly, the Court finds that USF & G has made a payment, as that term is used in the USF & G and ERC policies, sufficient to exhaust its obligations to the County and to trigger ERC's duty to defend.

### B. *Judgment or Adjudication*

■ ERC is technically correct that there has been no "judgment" issued in the underlying action. However, there may never be one, and it would be fundamentally unfair and contrary to the reasonable expectations of the parties to force USF & G to continue to provide a defense after it has tendered its liability limits and paid all costs up through that date. *See Pacific Indem. Co. v. Fireman's Fund Ins. Co.,* 175 Cal.App.3d 1191, 1201, 223 Cal.Rptr. 312 (1985). As the County is currently responsible for clean-up costs (and other associated costs), the RAO is, in effect, a judgment. Should the County one day recover any monies from previous property owners or polluters (a contingency which is very unlikely given the fact that much of the contamination allegedly occurred more than 100 years ago), such payments would constitute contribution, and not change the fact of the County's present day liability.[2] Moreover, the issuance of the RAO can be deemed as "adjudication" under the ERC policy sufficient to trigger coverage.

Accordingly, the Court finds that USF & G has exhausted its defense and indemnity obli-

---

DEFENSE. If no other insurer has the right and duty to do so, the Corporation shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage.

2. Any money received could then be reimbursed by the County to its insurers on an equitable, pro rata basis.

gations to the County, and that as a result of the insurance contract between the County and ERC, ERC must now provide a defense to its insured. In the event that ERC refuses to step forward and acknowledge its obligations, USF & G must remain in this action (notwithstanding certain terms in its settlement with the County) so that the County is not left prejudiced and without a defense. Of course, if ERC does not step forward, it will have little say in the management of the underlying litigation. Furthermore, ERC will remain liable to USF & G and be required to reimburse USF & G for all defense and indemnification costs provided after the date of the settlement.

### CONCLUSION

Having considered the papers, submissions, and arguments submitted by the parties, and good cause appearing, the Court hereby orders that the summary judgment motion of Plaintiff County of Santa Clara and Co–Defendant USF & G is GRANTED and that USF & G's motion for determination of good faith settlement is also GRANTED.[3]

IT IS SO ORDERED.

---

**3.** At oral argument, Co–Defendant ERC informally requested certification of any adverse rulings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court declines to certify its rulings in response to this informal request. ERC may file a formal, noticed motion for interlocutory review with this Court if it wishes to seek certification for immediate appellate review.