**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA**

v.

**SAFETY NATIONAL CASUALTY CORPORATION.**

No. 92–4150.

United States District Court, E.D. Pennsylvania.

June 16, 1993.

---

**706**

Richard W. Yost, L'Abbate & Balkin, Philadelphia, PA, Richard P. Byrne, Victoria R. Drogin, Garden City, NY, for plaintiff.

Thomas J. Duffy, John Mirabella, Philadelphia, PA, for defendant.

## OPINION

PADOVA, District Judge.

This diversity action requires the Court to determine the extent of an excess insurer's duty to contribute toward the costs of defending its insured. The parties agree that this dispute may be resolved summarily, and each has filed an appropriate motion for summary judgment under Federal Rule of Civil Procedure 56(c).[1] For the following reasons, I conclude that the excess insurer in this case, defendant Safety National Insurance Corporation ("Safety National"), has an equi-

table duty to contribute on a *pro rata* basis toward the costs of defending its insured. I will therefore enter summary judgment in favor of the primary insurer, plaintiff General Accident Insurance Company of America ("General Accident").

### I.

The following pertinent facts are not in dispute. General Accident issued to the law firm of Blank, Rome, Comisky & McCauley ("Blank Rome") a primary lawyer's professional liability insurance policy with a coverage limit per claim and in the aggregate of $10 million. This policy covered the period from April 8, 1984 to April 8, 1985. Safety National also issued to Blank Rome a lawyer's professional liability insurance policy for the same period but in excess of General Accident's policy, with a coverage limit of $5 million per claim and in the aggregate, part of $25 million, excess of $25 million.

Some time after these policies were issued, claims were made and lawsuits were filed against Blank Rome regarding services it rendered in connection with the Sunrise Savings and Loan Association. Blank Rome subsequently sought defense and indemnification under these policies and those provided by other insurers. General Accident, Safety National, and the other insurers contested coverage for these claims and lawsuits; but subject to reservation of its rights under its policy, General Accident nonetheless undertook Blank Rome's defense.

On July 28, 1988, Blank Rome entered into an agreement with General Accident, Safety National, and the other insurers in settlement of these coverage disputes. Pursuant to the terms of that agreement, each insurer agreed to tender the full amount of its policy limits in exchange for a release from Blank Rome of any further liability or defense obligation.[2] General Accident now seeks contributions from the excess insurers toward the

---

1. Defendant initially filed a motion to dismiss, which I denied as moot and without prejudice to the arguments asserted in light of its instant motion for summary judgment. I will consider the arguments made in its motion to dismiss in resolving the instant motions.

2. General Accident agreed to continue defending Blank Rome for a limited time beyond the date of this agreement.

costs it incurred in defending Blank Rome,[3] and has initiated the instant action to recover from Safety National its *pro rata* share of defense costs.[4]

## II.

Because the parties are diverse and the amount in controversy exceeds $50,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The issue presented is whether Safety National, as an excess insurer, is obligated to contribute toward the costs of defending its insured, Blank Rome. The parties agree that the substantive law of Pennsylvania governs resolution of this issue [5] and that the Pennsylvania appellate courts have not decided the question. I will therefore be required to predict how the Pennsylvania Supreme Court would rule if presented with the issue. *See State Farm Mut. Auto. Ins. Co. v. Armstrong*, 949 F.2d 99, 101 (3d Cir. 1991).

### A.

■ General Accident bases its claim that Safety National must pay a *pro rata* share of defense costs upon common law principles of equitable contribution.[6] In this connection, there is no disagreement between the parties that a growing number, if not a majority, of jurisdictions recognize that "[t]he respective obligations as between several insurers who have covered the same risk do not arise out of contract, but are based upon equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." *Guaranty Nat'l Ins. Co. v. American Motorists Ins. Co.*, 758 F.Supp. 1394, 1397 (D.Mont. 1991), *aff'd in part on other grounds*, 981

F.2d 1108 (9th Cir.1992). *See also id.* at 1396–98 (collecting and analyzing cases); *Signal Companies v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 805, 612 P.2d 889, 895 (1980). *But see Home Indemnity Co. v. General Accident Ins. Co. of Am.*, 213 Ill.App.3d 319, 157 Ill.Dec. 498, 572 N.E.2d 962 (1991) (equitable contribution inapplicable in primary/excess insurer context). The equitable considerations that apply in a given case "depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers." *Signal*, 165 Cal.Rptr. at 805, 612 P.2d at 895.

General Accident urges that the language of the particular insurance policies in this case gives rise to an equitable obligation on the part of Safety National to pay a *pro rata* share of defense costs. In support, General Accident points initially to the language of Safety National's excess liability insurance policy and makes the following observations. First, Safety National's excess policy is silent as to defense costs: It neither contains language undertaking an obligation to defend Blank Rome nor language disclaiming such a burden. Second, Safety National's policy states expressly that it "shall follow all the terms and conditions of the primary policy(ies) listed" in the policy declarations, and the only *primary* policy listed is General Accident's.[7] Thus, General Accident argues, Safety National's policy incorporates all of the terms and conditions of General Accident's policy.

Turning next to the terms and conditions of General Accident's policy, General Accident points out that provision is expressly

---

**3.** General Accident claims to have spent approximately $5 million defending Blank Rome.

**4.** The Court has been advised that General Accident and Blank Rome's other insurers have agreed to submit their defense cost disputes to some form of alternative dispute resolution.

**5.** Sitting in diversity, I must apply state law to the substantive questions raised by this dispute. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**6.** General Accident also asserted a claim for breach of contract. Safety National moved to dismiss this claim on grounds, *inter alia*, that

General Accident and Safety National are not in privity of contract. In its response, General Accident has conceded that its action against Safety National can only lie in equity, not contract. *See* Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Cross–Motion in Support of Summary Judgment at 2–3. Accordingly, I will dismiss General Accident's breach of contract claim.

**7.** An excess policy issued by Lexington Insurance Company is also listed.

made for the defense of Blank Rome,[8] as well as for the apportionment of defense costs between General Accident and other carriers on a *pro rata* basis "[i]n the event payment for damages by the Insured [Blank Rome], any other carrier on behalf of the Insured and the Company [General Accident] is in excess of the amount of the limit available under this policy...." General Accident argues that because the amount of damages paid on behalf of Blank Rome exceeded the limits of its policy, Safety National is obligated under this language, which has been incorporated into Safety National's policy, to share in the costs of defending Blank Rome on a *pro rata* basis.

Safety National offers essentially two arguments in opposition. Not disputing that its policy is silent on defense costs, Safety National first contends that its policy follows not the terms and conditions of General Accident's primary insurance policy but those contained in an excess policy issued to Blank Rome by Lexington Insurance Company ("Lexington"), which expressly disavow any defense obligation. Second, Safety National asserts that, regardless of the terms incorporated into its policy by reference, the express language of its policy states that "liability shall attach to the Company [Safety National] only after the Underlying Umbrella Insurers [General Accident and Lexington] have paid or have been held liable to pay the full amount of their respective ultimate net loss liability...." As to this second contention, Safety National reasons that it cannot possibly be liable for defense costs in this case because those costs were incurred *before* General Accident and the other underlying insurers paid their coverage limits (July 28, 1988, the date Blank Rome's insurers agreed to tender their policy limits), thus not triggering liability under its policy.

### B.

In interpreting the language of these insurance policies, I am guided by

the well-settled principles governing the interpretation of insurance policies under Pennsylvania law, which include the following: if the language of an insurance policy is clear and unambiguous, its ordinary meaning is to be given effect; policy terms should be read to avoid ambiguities; a provision is ambiguous if reasonable persons on considering it in the context of the entire policy could honestly differ as to its meaning, if ambiguities do exist in the wording chosen by the insurance company, they must be resolved in favor of the insured; a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy.

*Imperial Casualty & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir.1988) (footnote omitted). Applying these principles, I first conclude that Safety National's excess liability insurance policy incorporates *all* of the terms and conditions of *General Accident's* primary liability insurance policy, *not* Lexington's excess policy. As set forth above, the Safety National policy expressly states that it incorporates "all the terms and conditions of the *primary policy(ies)* listed" in the declarations (emphasis added). Turning to the declarations, only two policies are listed: General Accident's (a *primary* policy) and Lexington's (an *excess* policy). The language and the intent could not be more clear or unambiguous: Safety National expressly incorporated into its policy all of the terms and conditions of General Accident's primary policy.

I must now consider the import of this conclusion. As stated above, the parties are in agreement that, according to its terms, Safety National's policy is silent on the defense of Blank Rome. Safety National's incorporation into its policy of the terms and conditions of General Accident's policy, however, breaks this silence. By incorporating the defense obligation language contained in General Accident's policy, Safety National affirmatively obligated itself to participate in Blank Rome's defense. *Cf. Pacific Indem.*

---

8. In pertinent part, the policy states that "[t]he Company [General Accident] will defend any claim made against the Insured [Blank Rome] brought anywhere in the world, provided that coverage is afforded by the policy, even if the allegations of the claim are groundless, false or fraudulent."

*Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App.3d 1191, 1199, 223 Cal.Rptr. 312, 316–17 (1985) (excess carriers have an implied duty to defend unless clearly and expressly excluded in their policy). The only question that remains is the extent of this obligation.

"Where more than one insurer has obligated itself to defend a common insured, the duty to defend coexists, unless by express policy language, a particular insurer's obligation to defend is contingent in nature." *Guaranty Nat'l*, 758 F.Supp. at 1397 (citing *e.g., Lujan v. Gonzales,* 84 N.M. 229, 233, 501 P.2d 673, 677 (App.1972)), *cert. denied sub. nom., Gonzales v. Allstate Ins. Co.*, 84 N.M. 219, 501 P.2d 663 (1972). By incorporating into its policy the terms and conditions of General Accident's policy, Safety National incorporated General Accident's defense cost apportionment clause, which provides for a *pro rata* sharing of defense costs between insurers in the event the limits of General Accident's policy are exceeded. The plain meaning of the presence of this clause, incorporated into Safety National's policy, is that Safety National's defense obligations are contingent upon the exhaustion of General Accident's primary policy limits and limited to a *pro rata* share. As General Accident's policy limits were exceeded and the contingency satisfied, it follows that Safety National is obligated to contribute a *pro rata* share of the costs of defending Blank Rome.

Safety National argues, however, that its defense obligation could not have been triggered because the "Limit of Liability" section of its policy states that "liability" does not "attach" until the underlying policy limits have been exceeded.[9] Safety National contends that most, if not all, of the costs of defending Blank Rome were incurred *prior* to the time when the underlying policy limits were exceeded and its liability attached. Since these defense costs were incurred be-

fore liability "attached" under its policy, Safety National reasons, it cannot be liable for such costs. This argument is misguided.

Safety National is entirely correct that liability under the "Limit of Liability" section does not "attach" until the underlying policy limits have been exceeded. But this is merely a temporal statement about *when* liability attaches. The dispute here is not over when Safety National's liability attached, for all agree that Safety National's liability attached only after the underlying limits were paid in settlement. What is at issue in this case is *for what* Safety National was liable.

Just after subparagraph (b) in the same "Limit of Liability" section pointed to by Safety National, the policy expressly states that "the Company [Safety National] shall *then* [after the underlying policy limits have been exhausted and liability has attached] be liable to pay only the *excess* thereof up to a further $5,000,000 p/o [part of] $25,000,000 ... [emphasis added]." Explaining for what Safety National will be liable, this clause makes clear that the "attaches" clause referred to by Safety National is temporal only and that any attaching liability will require Safety National to *indemnify* Blank Rome for amounts in excess of the underlying policy limits, up to certain dollar values. It says nothing, however, about the nature of Safety National's duty to defend. The defense obligation and defense cost apportionment clauses incorporated into Safety National's policy address the extent of this duty, and, as stated above, limit liability to Safety National's *pro rata* share of defense costs, contingent upon exhaustion of underlying policy limits. There is no indication that Safety National intended to limit its liability only to those defense costs incurred after the underlying policy limits were exhausted. Indeed, just the opposite is conveyed by the incorporated presence of the apportionment clause, which

---

**9.** This section of Safety National's policy states, in pertinent part, as follows:

LIMIT OF LIABILITY—UNDERLYING LIMITS

It is expressly agreed that liability shall *attach* to the Company only *after the Underlying Umbrella insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss* liability as follows:

(a) $25,000,000 ultimate net loss in respect of each occurrence, but
(b) $25,000,000 in the aggregate for each annual period during the currency of this Policy ...
and the Company shall *then* be *liable to pay only the excess thereof up to a further*
(c) $5,000,000 p/o 25,000,000....
(emphasis added).

states that the insurer "shall be obligated to pay that proportion of claim expenses [defense costs] as the amount of damages paid by the [insurer] bears to the total amount of damages." Thus when the defense costs were incurred, either before or after the policy limits were exceeded, is irrelevant.

In urging a different result, Safety National relies almost exclusively upon *Signal Companies v. Harbor Ins. Co.,* 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980). There, the Supreme Court of California held that the excess carrier was not obligated to contribute to defense costs because the costs were incurred before the primary coverage was exhausted and before any request was made to the excess carrier to participate in the defense, as was required by the policy. In support of its position, Safety National points to the court's express rejection of the primary carrier's argument that the excess carrier must participate in the defense *"as soon as it is notified* of the claim, and *even though the primary insurance coverage has not yet been exhausted." Id.* 165 Cal.Rptr. at 804, 612 P.2d at 894 (emphasis added). The court held that such an argument was

> untenable for several reasons. First, [the excess carrier's] policy explicitly states that its liability would not attach until the primary coverage has been exhausted. Next, the same policy provides that the duty to contribute to costs would arise only if [the insured] obtained [the excess carrier's] written consent to incur costs which [the insured] neither sought not obtained.... Finally, [the primary insurer's] contention would require [the excess insurer] to contribute to the defense costs incurred by the primary carrier even though excess liability might never attach and despite the explicit provisions of [the excess insurer's policy]

*Id.* (emphasis added).

Several things are important to note about *Signal.* First, unlike here, the excess policy in *Signal* contained a clause expressly limiting the excess carrier's duty to investigate and defend to circumstances where it had given its consent to a continuation of proceedings against the insured. *Id.* at 801, 612 P.2d at 891. Such consent was not obtained

from the excess carrier in *Signal,* however, and the court based its holding largely upon this fact.

Second, unlike here, neither the primary nor excess policies in *Signal* contained a clause expressing the intention that defense costs be apportioned between the primary and excess carriers on a *pro rata* basis.

Third, in the passage quoted above, the court was explaining only its rejection of the proposition that an excess insurer should be required "to participate in the defense of the insured *as soon as it is notified of the claim,* and *even though the primary insurance coverage has not yet been exhausted* [emphasis added]." Such an argument has not been advanced here. General Accident does not contend that Safety National was obligated to participate in defending Blank Rome as soon as Safety National was notified of a claim and before liability attached under Safety National's policy. General Accident simply asserts that Safety National should be obligated to participate in defense costs on a *pro rata* basis because (1) the underlying policies have been, in fact, exhausted; (2) Safety National's policy expressly states that liability attaches in that event; and (3) Safety National's policy incorporates a duty to defend and a clause apportioning defense costs on a *pro rata* basis, without regard to when the defense costs were incurred.

Finally, I note that the California Supreme Court expressly declined in *Signal* "to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which may affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers." *Id.* 165 Cal.Rptr. at 805, 612 P.2d at 895.

As the California Supreme Court itself recognized, *Signal* must be carefully read in light of its facts. So read, I find it entirely distinguishable from the instant case. *Compare Hartford Accident & Indemnity Co. v. Continental Nat'l Am. Ins. Co.,* 861 F.2d 1184 (9th Cir.1988) (excess carrier not required to contribute to defense costs because

primary carrier's policies were not exhausted and excess carrier's liability had not yet attached); *Chubb/Pacific Indemnity Group v. Insurance Co. of North Am.*, 188 Cal.App.3d 691, 233 Cal.Rptr. 539 (1987) (same).

Safety National also argues that the defense cost apportionment clause contained in General Accident's policy and referred to above is nothing more than an "other insurance" provision, intended only to allocate financial responsibility among concurrent, primary carriers, not between primary and excess carriers. I disagree. Such an "other insurance" provision appears elsewhere in General Accident's policy and states, in pertinent part, that "[t]his insurance shall be in excess of the amount of the deductible and any other valid and collectable insurance available to the Insured ... unless the other insurance is written only as specific excess insurance over the limits of liability provided by this policy." This is a typical "excess" type of "other insurance" provision that "kicks in" to provide coverage only after other available, concurrent insurance is exhausted. *See Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 166 (3d Cir.1987). The defense cost apportionment clause, on the other hand, concerns defense costs only and specifically addresses the situation presented here where the limits of the *General Accident* policy have been *exceeded*. There accordingly can be no doubt that this clause is not an "other insurance" provision as Safety National contends.

As I stated at the outset of this opinion, neither the Pennsylvania Supreme Court nor the Pennsylvania appellate courts have ruled upon the respective defense obligations of primary and excess insurers in a context such as this. Were this case before it, I predict that the Pennsylvania Supreme Court would hold that the obligations between General Accident and Safety National are governed by equitable principles designed to accomplish ultimate justice. I also predict that the Pennsylvania Supreme Court would find the most significant equitable consideration in adjusting such obligations to be the parties' expectations as expressed in their policies.

The policies here, unlike in *Signal*, contain language demonstrating Safety National's clear intent to participate on a *pro rata* basis in the defense of Blank Rome in the event General Accident's policy limits were exhausted—a contingency all parties agree was satisfied. These are very sophisticated parties, and I must assume that Safety National knew of and intended the implications of following the form of General Accident's policy. And I am not aware of any equitable considerations that would relieve Safety National of its obligations.[10] Accordingly, I conclude that the Pennsylvania Supreme Court would hold that Safety National has an equitable obligation to pay General Accident a *pro rata* share of the costs incurred by General Accident in defending Blank Rome. I will therefore enter judgment in favor of General Accident and against Safety National.[11]

An appropriate order follows.

---

**10.** Indeed, such considerations run in favor of finding liability because the defense cost apportionment clause in General Accident's policy confines *General Accident's* own liability in paying Blank Rome's defense costs to a *pro rata* participation in the event its policy limits are exceeded, potentially leaving Blank Rome without a full defense. *See Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 217–20 (3d Cir.1986) (under Pennsylvania law, primary insurer not obligated to defend insured after its policy limits have been exceeded by judgment or settlement and insurer has participated in defense in good faith). Although Blank Rome was not left without a full defense in this case because the majority of defense costs were incurred prior to settlement, such an event is not difficult to imagine.

**11.** I reject Safety National's truly half-hearted argument, asserted in its motion to dismiss, that this matter should be dismissed under Fed. R.Civ.P. 19(b) for failure to join Blank Rome's other excess insurers. First, Safety National cites no case law whatsoever in support of its contention. Second, Safety National has not even attempted to demonstrate why, if it feels the other excess carriers are indispensable, they cannot be joined to this action. Third, Safety National does not demonstrate why these excess carriers are in any way indispensable to an action by General Accident to recover only *Safety Mutual's pro rata* share of defense costs, as provided for under *Safety Mutual's* policy. The absence of the other excess carriers from this dispute is in no way prejudicial to Safety National or those carriers.

## ORDER

AND NOW, this 4th day of June, 1993, upon consideration of the cross motions for summary judgment the parties captioned above, and all papers filed in support thereof and in response thereto, IT IS HEREBY ORDERED, for the reasons stated in the accompanying Opinion, that:

(1) the Cross–Motion for Summary Judgment of Plaintiff, General Accident Insurance Company (Docket Entry No. 7), is GRANTED;

(2) the Cross–Motion for Summary Judgment of Defendant, Safety National Casualty Corporation (Docket Entry No. 10), is DENIED; and

(3) SUMMARY JUDGMENT is entered IN FAVOR of PLAINTIFF and against DEFENDANT.