# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## No. 00-41322

---

SCHNEIDER NATIONAL TRANSPORT,
Etc.,

                                        Plaintiff,

                    versus

FORD MOTOR COMPANY; Et Al,

                                        Defendants.

_____

SCHNEIDER NATIONAL TRANSPORT, as successor in
interest to Builders Transport, Inc.,

                                        Plaintiff - Appellee,

                    versus

ALEXANDER AND ALEXANDER OF NEW YORK INC.; Et Al,

                                        Defendants,

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

                                        Defendant - Appellant.

---

**Appeal from the United States District Court
for the Eastern District of Texas**

---

**January 18, 2002**

**Before JONES and DeMOSS, Circuit Judges, and LIMBAUGH,[1] District Judge.**

**LIMBAUGH, District Judge:**

This diversity case involves a dispute between primary and excess coverage insurance carriers as to the obligation to pay the cost of defending a lawsuit of the insured. The case was submitted to the district court on cross-motions for summary judgment. Appellee's motion for summary judgment was granted and appellant's denied. In so ruling, the district court determined that appellant, the excess insurance carrier, was required to contribute to the cost of the primary carrier of defending the lawsuit of the insured. This court reverses that decision, finding that the excess carrier was not required to contribute to the cost of defending its insured's lawsuit until the primary carriers had exhausted their underlying policy limits.

BACKGROUND

Builders Transport, Inc. ("Builders") was a national freight company which operated a fleet of trucks throughout the United States.[2]

Builders, one of the largest truckers in the country, maintained a three-tiered structure to cover any loss resulting from a motor vehicle accident involving its fleet. Any loss not exceeding $1,000,000 arising from a collision was covered by Builders self-insured retention ("SIR"). Builders would pay all claims, including fees and expenses, for losses under $1,000,000.

Planet Insurance Co. ("Planet") provided coverage for Builders for losses between $1,000,000 and $2,000,000. As to the payment of expenses and fees, the Planet policy provided that "in the event that any claim(s), exceed the Named Insured's self-insured retention and involve the liability of the Company, then, solely as respects each such claim the Company and the Named Insured shall prorate all costs and expenses in direct proportion to the amount of damages applicable to and payable by each of them . . . ."

---

[1]    District Judge of the Eastern District of Missouri, sitting by designation.

[2]    At a time following the events leading to this litigation, Builders was adjudicated a bankrupt and appellee Schneider National Transport bought Builders assets and was substituted as the plaintiff on March 17, 2000.

In order to protect itself against a catastrophic loss, Builders purchased from appellant a $13,000,000 excess coverage, or umbrella, policy. Thus, appellant in its policy agreed to pay all losses between $2,000,000 and $15,000,000. Appellant's policy contained the following language relevant to defense costs:

"Insuring Agreements

II.     Defense, Settlement and Supplementary Payments:

Should applicable underlying insurance(s) become exhausted by payment of covered claims, this insurance will continue in force as underlying insurance and shall defend any suit arising out of a covered occurrence . . .

Except for exhaustion of underlying limits by payment of covered claims, and occurrences not covered by the underlying policies, but covered by this policy, the company shall not be called upon to investigate or defend any suit brought against the insured, but the company shall have the option to associate in the investigation and/or defense of suits covered under this policy . . . ."

On November 25, 1993 when the policies of Planet and appellant were in force, a truck driver employed by Builders was involved in a multi-vehicle collision. Two people died and several others suffered catastrophic permanent injuries as a result of the collision. Suit for personal injuries was brought in the district court of Jefferson County, Texas, captioned Clancy, et al. and Chandler v. Builders Transport, Inc., Cause No. B-144, 840-B. Trial was set for the first part of June 1995 and the case was settled shortly before trial. The first portion of the settlement, occurring on June 9, 1995, was in the sum of $13,800,000. Of this sum, Builders paid $838,834, Planet paid $1,000,000 and appellant paid $11,961,166.

On June 27, 1995 the remainder of the case was settled for $2,200,000. Of this sum, appellant paid $1,038,834 and Builders paid $1,161,166 as uninsured exposure.[3]

Builders claim that approximately $1,400,000. was incurred in costs and fees by it in defending the claims. The great portion of this amount was incurred before the first settlement on

---

[3]     The district court found that the second portion of the settlement was for $2,500,000 with Builders contributing an additional $1,300,000 as its uninsured exposure. The precise settlement does not affect the outcome of this case as the parties all agree that Builders not only exhausted its initial $1,000,000 coverage, but contributed, in addition, a substantial sum as uninsured exposure and that both Planet and appellant paid their policy limits.

June 9, 1995.  About $50,000 was incurred between the first settlement on June 9, 1995 and the final settlement on June 27, 1995.

Builders assert that appellant and Planet should participate in the payment of the defense costs.[4]  The Planet policy provided for a *pro rata* sharing of defense costs by all contributors to the settlement of a claim.  Appellant's policy provided that once underlying coverages are exhausted, its insurance will continue in force as underlying insurance and appellant shall defend any suit arising out of a covered occurrence.

In its decision, the district court reasoned that the phrase "as underlying insurance" when used in the context chosen by appellant in the defense portion of its own policy can only mean that upon the exhaustion of underlying coverages, appellant's policy will defend in the same manner as, or according to the way the underlying Planet policy operated, and that it will provide coverage for expenses to the same degree in which that policy did.  See Builders Transport, Inc. v. Ford Motor Co., 25 F.Supp.2d 739, 744 (E.D.Tex. 1998).  The costs were then apportioned and appellant was ordered to pay $627,866.72 for its proportionate *pro rata* share of the costs and fees incurred by Builders.  Appellants were also ordered to pay Builders $522,422.14 for reasonable costs and attorneys' fees incurred in connection with this action.

Appellant urges this Court to reverse the finding of the district court and determine that it erred in applying Pennsylvania law as opposed to Texas law, and erred in failing to find that appellant had no duty to its insured to provide costs and expenses incurred prior to exhaustion of all underlying insurance; that is, appellant should have no obligation to pay for costs and expenses incurred until after the payout of the first settlement on June 9, 1995.

DISCUSSION

*Standard of review.*

We review the district court's grant of summary judgment and its interpretation of the insurance policies involved *de novo.*  American Guar. and Liability Ins. Co. v. 1906 Co., 129 F.3d 802, 805 (5th Cir. 1997); Matador Petroleum v. St. Paul Surplus Lines Ins., 174 F.3d 653,

---

[4]     Apparently, Builders has settled its claim for an apportionment of these costs with Planet.

656 (5th Cir. 1999).

*The issue as to whether the law of Pennsylvania or Texas should apply.*

In an attempt to resolve this problem, the district court conducted a conflicts analysis and determined that the law of Pennsylvania should apply. This analysis was undertaken even though the district court found, and the parties agreed, that the laws of Pennsylvania and Texas are all in accord insofar as the issues before the Court are concerned. Builders Transport, Inc., 25 F. Supp. 2d at 743. Appellee also concedes this in its brief.

However, "If the laws of the states do not conflict, then no choice-of-law analysis is necessary." W.R. Grace and Co. v. Continental Cas. Co., 896 F.2d 865, 874 (5th Cir. 1990); National Union Fire Ins. v. CNA Ins. Companies, 28 F.3d 29, 32, n. 3 (5th Cir. 1994). Thus, the law of the forum state, Texas, should apply here as there is no conflict between the substantive state law of Texas and Pennsylvania as each requires that insurance contracts, like other contracts, be interpreted according to their plain meaning. Puckett v. United States Fire Insurance Co., 678 S.W.2d 936, 938 (Tex. 1984), Ranieli v. Mutual Life Ins. Co., 413 A.2d 396 (Pa. 1979).

Even if a choice of law analysis was required to be made, the Court determines that Texas probably has the most significant relationship to the substantive issues to be resolved. "Under Texas choice-of-law principles, contract disputes are governed by 'the law of the state with the most significant relationship to the particular substantive issue.'" W.R. Grace & Co., 896 F.2d at 873 citing Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984). See also Hughes Wood Products, Inc. v. Wagner, 18 S.W.3d 202, 205 (Tex. 2000). The only relationship that Pennsylvania has to this case is that appellant was incorporated there, but had its headquarters in New York. Builders had its headquarters in South Carolina. All of the litigation giving rise to this case occurred in Texas. All of the defense costs, which are the subject of this litigation were incurred in Texas and involved Texas attorneys. The mere fact of appellant's incorporation in Pennsylvania does not lead this Court to believe that that state has the most significant relationship to the substantive issue to be resolved here. The Court finds, therefore, that the law of Texas is the proper choice of law and the district court erred in determining that the law of Pennsylvania was the proper choice.

*The dispute between the primary and excess insurance carriers as to the payment of defense costs.*

In considering this issue, the district court first examined the policy of Planet, an underlying carrier. No party takes exception to the finding that Planet's policy provided for a pro rata sharing of defense costs by all contributors to the settlement of a claim. The claim of error is made to the district court's finding that the excess coverage policy of appellant must be construed to require it to provide coverage for expenses to the same degree provided for by Planet's policy.

In reaching its conclusion, the district court relied heavily on the holding in General Accident Insurance Company of America v. Safety National Casualty Corporation, 825 F. Supp. 705 (E.D. Pa. 1993). In that case, General Accident wrote a policy for a law firm providing primary lawyer's professional liability insurance. Safety National provided excess coverage. The law firm was involved with suits over a failed Savings & Loan association and General Accident provided the defense for the firm. The cases were settled with each company paying its policy limits. General Accident sought contribution from Safety National for a pro rata share of the defense costs upon common law principles of equitable contribution. The court entered summary judgment for General Accident holding that Safety National "has an equitable duty to contribute on a pro rata basis toward the costs of defending its insured." General Accident, 825 F. Supp. at 706.[5]

The reliance on the case of General Accident by the district court here is inappropriate for two reasons: first, General Accident applied Pennsylvania law, not Texas law. Second, and most important, that case was decided on equitable principles, not contractual interpretation; here, the suit is founded on breach of contract involving contract interpretation. No claim was made by appellee for equitable relief.[6]

---

[5]    General Accident had also asserted a claim for breach of contract, but later conceded that its action could only lie in equity, not contract, so the court dismissed the breach of contract claim. See General Accident, 825 F. Supp. at 707, n. 6.

[6]    The decision in General Accident does not suggest, and we do not infer that Pennsylvania law is different from Texas law, thereby requiring a choice of law analysis. General Accident was decided on equitable principles, not contract interpretation. In fact, General Accident conceded it had no claim in contract assuming had it continued to urge that claim, it

The parties have agreed and the court concurs that appellants' policy is not ambiguous. Thus, "Under Texas law, the same rules that apply to contracts in general govern the interpretation of insurance contracts." Matador Petroleum, 174 F.3d at 656 citing National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). "When interpreting a contract, our primary concern 'is to ascertain and to give effect to the intentions of the parties as expressed in the instrument.' R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). To achieve this objective, we consider the contract as a whole." Matador Petroleum, 174 F.3d 556. This Court must consider the policy terms according to their plain and ordinary meaning. Puckett, 678 S.W.2d at 938.

The provision at issue in appellant's policy provides:

<u>"Insuring Agreements</u>

II.  <u>Defense, Settlement and Supplementary Payments:</u>

Should applicable underlying insurance(s) become exhausted by payment of covered claims, this insurance will continue in force as underlying insurance and shall defend any suit arising out of a covered occurrence . . .

Except for exhaustion of underlying limits by payment of covered claims, and occurrences not covered by the underlying policies, but covered by this policy, the company shall not be called upon to investigate or defend any suit brought against the insured, but the company shall have the option to associate in the investigation and/or defense of suits covered under this policy . . . ."

The plain and ordinary meaning of these policy provisions is that when underlying insurance has become exhausted, that is, when the company providing underlying insurance has paid on one or more claims to the maximum required under that policy, this insurance, the excess coverage, will come into play. Coverage under the excess policy will then be furnished including the defense costs. The excess carrier's duty to defend does not arise until the underlying

---

would not have been entitled to contribution from Safety National. Thus, on applying contract interpretation to these types of problems, it would appear the laws of Texas and Pennsylvania are not dissimilar.

insurance has been exhausted, i.e. when that insurance coverage has been paid out. This interpretation is supported by Texas law and the holding in the majority of other jurisdictions. See Texas Employers Ins. v. Underwriting Members, 836 F. Supp. 398, 404, 405, 407 and cases cited at 404 (S.D. Tex. 1993).

"The majority rule is that '[w]here the insured maintains both primary and excess policies, . . . the excess liability insurer is not obligated to participate in the defense until the primary policy limits are exhausted.'" Keck, Mahin and Cate v. Nat'l. Union Fire Ins. Co. of Pittsburgh Pa., 20 S.W. 3d 692, 700 (Tex. 2000) citing Texas Employers Ins., 836 F. Supp., at 404.

Appellee urges the court to follow the reasoning of the district court, that the phrase in appellant's policy "as underlying insurance" means the excess carrier must provide coverage for expenses to the same degree in which the underlying insurance policy did; that is, a pro rata sharing. A plain reading of the policy does not support this reasoning. Even though the excess coverage policy is to continue "as underlying insurance " after the primary policy limits are exhausted does not mean the provisions of a primary policy providing for defense costs are incorporated into the terms of the excess policy.

An incorporation by reference must be sufficiently clear for this court to conclude the parties intended the incorporation. Juntunen v. Sea-Con Services, Inc., 879 F.2d 154, 156 (5th Cir. 1989) (holding that the incorporation was intended when the excess liability policy provided that this policy shall follow the terms, conditions, definitions and exclusions of the controlling underlying insurance policy); King v. Employers Nat'l. Ins. Co., 928 F.2d 1438, 1444 (5th Cir. 1991) ( in a liability dispute the excess coverage policy provided that the provisions of the immediate underlying policy of the primary carrier are incorporated as a part of the excess policy

except for certain inconsistent provisions). See also 20th Century Ins. Co. v. Liberty Mut. Ins. Co., 965 F.2d 747, 750, 751 (9th Cir. 1992).

There is nothing in appellants' policy here that uses the term "incorporation" or "incorporation by reference" or "follow form" language. Nor is there any other express terminology stating that the provisions of the underlying policy are in some way to be a part of the terms of the excess policy, or that the parties intended this result. Absent such language, this Court is unable to hold that the parties intended, much less inferred, the defense cost burden be pro rated between all carriers as was provided for in the policy of Planet, one of the underlying carriers.[7]

In addition, the thrust of appellee's argument following the reasoning of the district court does not take into consideration that portion of appellant's policy that serves virtually as a disclaimer. The policy states that appellant "shall not be called upon to investigate or defend any suit brought against the insured" except for exhaustion of underlying limits by payment of covered claims. The plain meaning of this provision is that appellant disclaims any obligation to pay defense costs until the underlying policies have been exhausted or paid out. Only then will appellant have a contractual obligation to defend and pay costs.[8]

---

[7] This case would be fraught with considerable unnecessary difficulties if it ruled the term "as underlying insurance" was intended to incorporate terms of the underlying insurance policies into the excess policy. There are two underlying insurance policies; one written by Tenant and the other, SIR, the insured's self-insured retentions. Does "as underlying insurance" refer to both or only one of the underlying policies and if only one, which one? The record is silent as to prorating of costs that might be attributable to the SIR policy. The creation of such an ambiguity, in and of itself, would be highly improper and confusing.

[8] Although appellants' policy gives it "the option to associate in the investigation and/or defense of suits covered under this policy . . . ," there is nothing in the record to suggest the option was ever exercised. In any event, the availability of the option does not require

CONCLUSION

As the laws of the states of Texas and Pennsylvania do not conflict as to relevant issues in this case, the law of Texas, the forum state, should apply and the district court erred in following the law of Pennsylvania.

As the insured, Builders, maintained both primary and excess liability policies, the excess insurer, appellant, is not obligated to participate in the defense of suits against the insured until the primary policy limits are exhausted. Summary judgment, therefore, should have been granted to appellant rather than respondent and the district court erred in failing to so rule.

On review of the record, and the briefs of the parties, and for the reasons set forth in this opinion, we reverse the district court's decision and direct that summary judgment be entered for appellant. In so ruling, we hold that appellant shall have no obligation to pay for costs and expenses incurred until after the payout of the first settlement on June 9, 1995, nor will appellant be required to pay any sum to Builders for costs and attorney fees incurred in connection with this action.

REVERSED AND REMANDED.

---

appellant to share in the defense costs if the option is not exercised.